OPINION OF THE COURT. The declaration states, the New York and Erie Railroad, doing business and resident in the state of New York, plaintiffs, complain, &c. The defendants demurred on the ground that there was no sufficient allegation of citizenship, to give jurisdiction to the court. Where a corporation of another state sues in this court, an allegation of citizenship is not now necessary, as was formerly required. The state where the corporation is located and in which its corporate functions are exercised, if alleged, is sufficient to give jurisdiction. The demurrer is overruled.

---

NEW YORK & E. R. CO. (WINANS v.). See Case No. 17,863.

NEW YORK & H. R. CO. (WINANS v.). See Case No. 17,864.

---

## Case No. 10,198a.

NEW YORK & L. STEAMBOAT CO. v. WILSON.

[Nowhere reported; opinion not now accessible.]

---

NEW YORK & L. B. R. CO. (EASTON v.). See Case No. 4,259.

NEW YORK & N. H. R. CO. (ANDERSON v.). See Case No. 360.

NEW YORK & N. H. R. CO. (ILLINS v.). See Case No. 7,010.

---

## Case No. 10,199.

NEW YORK & N. H. R. CO. v. NEW YORK.

[4 Blatchf. 193.] [1]

Circuit Court, S. D. New York.    Sept. 7, 1858.

RAILROADS—MUNICIPAL REGULATIONS — RESERVATION AS TO MOTIVE POWER—LAWFULNESS—CONSTRUCTION OF CHARTER.

1. By the act of the legislature of New York, passed April 25, 1831, incorporating the New York and Harlem Railroad Company (Sess. Laws 1831, c. 263), the consent of the authorities of the city of New York was required to the construction of the road within the city, and the act authorized those authorities "to regulate the time and manner of using the same." The authorities consented to the construction of the road within the city, and, at the same time, the company covenanted that the authorities should retain "the right of regulating the description of power to be used" in the propulsion of cars within the limits of the city: Held, that the condition so annexed to such consent was authorized by said act.

2. An unrestricted power to make a grant or concession enables the party to make it upon conditions.

[Cited in Pepin Co. v. Prindle, 61 Wis. 309, 21 N. W. 256.]

3. The authorities had the right to forbid the running of locomotive engines, by the company, on their road, within the city, at any time when, in their judgment, the interests of the public demanded it.

---

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

4. The act of the legislature of New York, passed March 29, 1848 (Sess. Laws 1848, c. 143), did not confer upon the New York and New Haven Railroad Company any greater privileges, in respect to the running of locomotive engines, within the city of New York, upon the tracks of the New York and Harlem Railroad Company, than had been, or might be, conferred on the latter company, and the city authorities have the right to prevent the running of such engines, within the city, by the former company, on the tracks of the latter company.

This was a motion for a provisional injunction, to restrain the defendants from interfering with the running of the plaintiffs' locomotive engines on their tracks in the Fourth avenue, in the city of New York, south of Forty-Second street. The common council of the city of New York passed an ordinance, on the 27th of December, 1854, declaring that no locomotive or steam engine should be allowed to run on the tracks of the New York and Harlem Railroad Company, or of the New York and New Haven Railroad Company, in the Fourth avenue, south of Forty-Second street, eighteen months after the passing of the ordinance. The board of police commissioners threatened to carry into effect that ordinance. The two companies used the same track in entering the city, the New York and New Haven Company having been authorized to use the tracks of the New York and Harlem Company, by an act of the legislature of the state of New York.

The New York and Harlem Railroad Company was incorporated by the legislature of New York, April 25th, 1831. By the first section of the act of incorporation (Sess. Laws 1831, c. 263), it was empowered to construct their road from any point on the north bounds of Twenty-Third street, to any point on the Harlem river, between the east bounds of the Third avenue and the west bounds of the Eighth avenue, &c., and "to transport, take, and carry property and persons upon the same, by the power and force of steam, of animals, or of any mechanical, or other power, or of any combination of them, which the said company may choose to employ." By the sixteenth section, it was provided, that nothing in the act should be deemed to authorize the company to construct their road across or along any of the streets or avenues, as designated on the map of the city of New York, &c., without the consent of the mayor, aldermen, and commonalty of the city, who were authorized to grant or refuse the construction of the road, and, after the same should be constructed, "to regulate the time and manner of using the same, and the speed with which carriages shall be permitted to move on the same, &c."

The common council, in pursuance of that act, passed an ordinance, giving their consent to the construction of a road along the Fourth avenue, from Twenty-Third street to Harlem river, with certain conditions annexed; and, among others, section 3 of the ordinance provided, that "the right of regulating the description of power to be used in propelling